UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN RAZZOLI,                              :
                                           :
              Petitioner                   :
                                           :
       v.                                  :   CIVIL NO. 3:CV-04-2495
                                           :
FCI ALLENWOOD, et al.,                     :   (Judge Kosik)
                                           :
              Respondents                  :

**M E M O R A N D U M**

I.   **INTRODUCTION**

       Kevin Razzoli filed this habeas corpus action pursuant to 28 U.S.C. § 2241 on

November 8, 2004.  At the time, he was confined at the Federal Correctional Institution at

Allenwood, Pennsylvania.[1]  He has paid the required filing fee in this matter.  Named as

Respondents are FCI-Allenwood, the United States Parole Commission, the District Attorney's

Office located in  Bronx, New York, and the United States Navy.  In the petition, Razzoli

challenges the denial of his release on parole.  Specifically, he contends that Respondents

_____

       [1]  It is unclear as to whether Razzoli is still at FCI-Allenwood.  He is in the process of
being transferred to the United States Penitentiary at Lewisburg, Pennsylvania for the purpose
of a parole hearing.  Thereafter, Razzoli is supposedly being transferred to a prison located
outside the Middle District of Pennsylvania.

continue to delay his release on parole through tactics which include the falsification of an

incident report and the rejection of his proposed release plans.  Since the filing of the petition,

there has also been a development where Razzoli was found guilty of possession of a weapon

within the prison.  While this will be more fully discussed during the factual recitation of the

case, Razzoli maintains that he was "set up" by Respondents to further thwart his parole

release efforts.

## II.   BACKGROUND

The court will now set forth the tortured procedural and factual history of this case.

Following the filing of the petition, an Order to Show Cause was issued directing Respondents

to answer the allegations raised in the petition.  (Doc. 14.)  The answer was supplemented with

additional information.  Razzoli has filed a traverse in addition to a flurry of other filings which

include motions for counsel, as well as requests for hearings, investigations and discovery.[2]

Razzoli was sentenced by the Naval Court Martial on December 1, 1987, to 25 years

imprisonment for attempted murder and other offenses.  (Doc. 34, Ex. 1.)  He was paroled from

this sentence on April 9, 2001.  (Id., Ex. 2.)  He thereafter violated the conditions of parole.

After accepting an expedited revocation proposal pursuant to 28 C.F.R. § 2.66, the Parole

Commission ordered Razzoli's parole revoked, and that he serve 8 months -- until August 17,

2002. (Id., Ex. 3.)

---

[2]On September 29, 2005, a Memorandum and Order was issued wherein Razzoli's motions for release on bail, for counsel, for a hearing and several other motions were denied. (Doc. 55.)

Razzoli was re-paroled September 16, 2002, to remain under parole supervision until November 14, 2012. (Id., Ex. 4.)  This parole was revoked in October of 2003, on a charge of use of dangerous and habit-forming drugs.  Razzoli was again re-paroled on December 19, 2003, with a full-term date of November 14, 2012. (Id., Ex. 6.)

On January 30, 2004, the Parole Commission issued a warrant charging Razzoli with violating his conditions of parole.[3]  He was later arrested on the warrant on February 9, 2004. The warrant was supplemented by the Parole Commission on March 13, 2004, with a charge of possession of a controlled substance, based on Petitioner's criminal conviction on said offense. Petitioner was offered eligibility for an expedited revocation procedure which he ultimately accepted on April 22, 2004.  Pursuant to the proposal, Petitioner accepted responsibility for his violation behavior, waived his right to a revocation hearing and appeal, and accepted the sanction proposed by the Commission - - the revocation of his parole, no credit for time spent on parole and re-parole effective September 28, 2004.  (Doc. 34, Ex. 12.)

In his petition, Razzoli claims that he appended a page to the expedited revocation proposal adding a requirement that he be placed in a halfway house, in return for his dropping a pending court action.  Razzoli also proposed that he be given a certificate of expiration after service of two-thirds of his sentence.[4]

---

[3]  Razzoli was charged with drug use and violation of the special condition that he reside in a halfway house.  (Doc. 34, Ex. 7.)

[4]  The validity/enforceability of Petitioner's additions to the expedited revocation agreement is one of the issues before the court in the pending petition for writ of habeas corpus.  Respondents maintain that the last page of the document was neither signed by

By Notice of Action dated September 29, 2004, the Parole Commission reopened Razzoli's case and retarded his effective parole date by 60 days for violating the rules of the institution. Specifically, he had been found guilty of interfering with a staff member in the performance of duties.[5] The new effective parole date became November 27, 2004. (Id., Ex. 13.)

As the new release date approached, Razzoli was informed by the Bureau of Prisons that his submitted release plans were not acceptable to the supervising Probation Office, and that he was ineligible to be released to a halfway house due to the existence of a pending detainer. (Id., Ex. 14.) However, in the petition Razzoli claims that the District Attorney's Office in Bronx, New York, had instructed the BOP to lift all warrants on him and further informed them that New York would not be extraditing him. Respondents claimed, however, that an active warrant on Razzoli was still in place. The BOP requested that the release date be retarded to allow additional time for release planning. (Id.) The Parole Commission retarded Razzoli's date by 60 days to January 26, 2005. (Id. at 15.)

Razzoli filed an administrative appeal contending that the terms of the expedited revocation agreement prohibited the Commission from retarding his release date, and alleged retaliatory motives on the part of the Commission. The National Appeals Board decided to

---

anyone other than Razzoli, nor was it adopted or recognized as valid by the Parole Commission. (Doc. 34, Response at 4.)

[5] This is also an issue raised by Petitioner in that he contends the incident report was falsely manufactured by Respondents to delay his release on parole, and in retaliation for civil actions he has filed.

4

consider an appeal filed by Razzoli, and affirmed the decision of the Commission, citing to the

expedited revocation agreement wherein Razzoli had acknowledged his understanding that his

reparole date was contingent upon maintaining a record of good conduct at the institution and

submitting an acceptable release plan. (Id., Ex. 16.)

Thereafter, in a Memorandum dated January 25, 2005, the BOP informed the

Commission that Razzoli requested relocation to supervision in New Jersey.  The U.S.

Probation Office for the District of New Jersey denied Razzoli's request to relocate there. (Id.,

Ex. 17.)  In noting this along with the fact that Razzoli continued to be subject to a pending

detainer, the BOP reopened Razzoli's case and retarded his release date for an additional 60

days to a new parole effective date of March 27, 2005.  (Doc. 34, Ex. 18, Notice of Action.)

As the March 27, 2005 date approached, the Parole Commission was informed by

Razzoli's case manager at FCI-Allenwood that a viable release plan had not yet been

established.  (Doc. 62, Ex. 22, Memorandum.)  The Commission thereafter reopened Razzoli's

case, retarded his parole effective date of March 27, 2005, and scheduled a special hearing on

the next docket to consider a release plan.  (Id., Ex. 23.)

In early June 2005, the Commission received a letter from the United States Probation

Office for the Northern District of Illinois stating the Razzoli's proposed release plan was

denied.  Although a residence proposed by Razzoli had been verified by the Probation Office,

relocation to the Northern District of Illinois was denied based upon the fact that Razzoli had an

active warrant for his arrest pending out of the Bronx, New York, for failure to pay a $300.00

fine and had no ties to the Chicago, Illinois area other than business ties with his attorney, Louis Buffardi, and he had no firm employment established.  While the Probation Office acknowledged that Razzoli claimed to be in the process of establishing a produce business in Chicago to be sold locally, it was noted that it would be better to have an established business or firm job offer in place.  (Id., Ex. 24, Letter.)

A special reconsideration hearing was conducted by the Commission on June 8, 2005. At the hearing, Razzoli was represented by Attorney Buffardi.  It was noted by the hearing examiner that the fine which served as the basis of the Bronx, New York detainer had been paid by Razzoli on June 7, 2005.  (Doc. 62, Ex. 25, Hearing Summary.)

The hearing examiner proceeded to review Razzoli's release plans with him.  Razzoli expressed his desire to relocate to Chicago.  The hearing examiner recommended that the Commission retard Razzoli's parole effective date until an acceptable release plan was developed.  This recommendation was adopted and Razzoli informed of such via a Notice of Action dated June 27, 2005. He was further advised that his case would be reviewed every 30 days. (Id., Ex. 26.)

On June 28, 2005, the Chief Probation Officer for this district informed the court that he had advised prison officials at FCI-Allenwood that the Probation Office for the Middle District of Pennsylvania would be willing to accept Razzoli under parole supervision provided that there was a suitable release plan.  (Id., Ex. 27.)

On July 22, 2005, the Commission was informed by Razzoli's case manager at FCI-

Allenwood that a release plan had been sent to the Southern District of New York on July 6, 2005, but it was not yet known whether it had been approved. (Id., Ex. 28.)  On July 25, 2005, there was still no approved plan.  The Commission conducted a 30 day review in accordance with its June 27, 2005 Notice of Action and ordered no change.

On August 25, 2005, it was learned by the Commission through Razzoli's case manager that the release plan to the Southern District of New York had been denied.  (Id., Ex. 29.)   The basis of the denial was Razzoli's inability to provide a release address and the Probation Department's belief that he would be unable, upon release, to afford a place of his own once released from CCC placement.  As such, upon review of Razzoli's case by the Commission, no change in the previous order was issued.  (Id., Ex. 30.)

A memorandum was sent to the Commission on September 23, 2005, by Razzoli's case manager wherein he states he had yet to receive written documentation from the Southern District of New York documenting that Razzoli's release plan had in fact been denied.  The Commission was further advised that a second release plan had been submitted to the Northern District of Illinois.

Approximately one week later, the Commission learned that Razzoli's case manager had received verbal acceptance of the release plan from the Northern District of Illinois, and was awaiting written notification of the same.  As of October 6, 2005, no information had been received by the Commission regarding any approval of a release plan.  On October 26, 2005, the Commission was informed that Razzoli's case manager had spoken with the Chief U.S.

Probation Officer for this district and that he was willing to accept Razzoli and approve public law placement as a release plan. (Id., Ex. 34 at 2.)  The case manager had also informed the Commission that he held a "special classification" meeting with Razzoli on October 25, 2005, and that "he reluctantly accepted the Middle District's offer" to permit his relocation there.[6] (Id.)

On November 8, 2005, a telephone call was placed by the case manager to the Commission informing them that he had just faxed the relocation request to the Middle District's Chief Probation Officer, and further informing the Commission that Razzoli had been placed in the Special Housing Unit at FCI-Allenwood just a few hours earlier because staff had received information that he possessed a shank in his cell.  The Commission was further informed that a subsequent search revealed a shank hidden under Razzoli's locker.

An incident report was prepared charging Razzoli with possession of a dangerous weapon.  A DHO hearing was conducted on November 17, 2005.  He denied knowledge of the shank found in his cell and claimed that a staff member had placed it there.  Statements and witnesses were presented and Razzoli had staff representation at the hearing.  Photographs of the weapon were also introduced.  After considering all of the evidence, the Disciplinary Hearing Officer found that the greater weight of the evidence supported his finding that Razzoli had committed the prohibited act of "Possession of a Weapon" (Code 104). (Doc. 64, Ex. 37, Attach. 1, DHO Report.)

---

[6]  Although, according to a document filed by Razzoli with the court on November 14, 2005, he had no desire to come to the Middle District of Pennsylvania and was forced to accept this proposed release plan. (Doc. 61.)

The DHO sanctioned Razzoli to 60 days of disciplinary segregation, the forfeiture of 220 days of statutory good time credit, and the loss of phone, visiting, and commissary privileges for a period of 18 months.  A disciplinary transfer was also recommended in order to meet Razzoli's greater need for supervision.  Id.

Respondents informed the court that, upon receipt of this DHO report, the Parole Commission may reopen Razzoli's case and retard the parole date for up to 90 days or even schedule a rescission hearing. 28 C.F.R. § 2.34(a).   Further, pursuant to the Parole Commission's regulations, since Razzoli was found to have possessed a shank, this could result in the assessment of additional guidelines of 12-16 months under the applicable parole regulations.  28 C.F.R. § 2.36(a)(2)(ii).

In the pending petition for writ of habeas corpus, the gist of Razzoli's claims center around his contention that he is being improperly denied release on parole due to Respondents' failure to honor the terms of an expedited revocation agreement and their retaliatory actions against him which include such alleged behavior as the falsification of incident reports, the unsubstantiated failure to approve proposed release plans and the resulting improper denial of his release on parole.  He has recently filed in this action challenges to the disciplinary proceedings which were conducted as a result of the shank incident. Razzoli has inundated the court with additional motions and requests which include an objection to Respondents' supplemental response to the habeas petition (Doc. 67); a document entitled "Ex Parte Communication" to clarify the misconduct incident (Doc. 68); a request for subpoenas (Doc.

69); a motion to compel discovery (Doc. 70); another motion for evidentiary hearing and request for subpoenas (Doc. 81) and a letter requesting emergency help before he is transferred to USP-Lewisburg (Doc. 82.)  Respondents filed a document on December 27, 2005, in reply to Razzoli's numerous filings.

The matter is presently before the court for consideration.  For the reasons that follow, the petition as well as all pending motions will be denied.

## DISCUSSION

### A.   Standard

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  To the extent that any such liberty interest exists, it must be created by the applicable parole statute. Id.  Furthermore, even if a liberty interest exists, due process requires only that a hearing be provided, and that the prisoner be given explicit reasons for denial of parole.  Board of Pardons v. Allen, 482 U.S. 369 (1987).

It is also well-settled that Congress has committed to the sound discretion of the Parole Commission the responsibility for making parole eligibility determinations.  United States v. Addonizio, 442 U.S. 178 (1979); Campbell v. U.S. Parole Comm'n, 704 F.2d 106 (3d Cir. 1983).  The function of judicial review of a Commission decision is simply to determine whether the Commission abused its discretion.  See United States v. Friedland, 83 F.3d 1531, 1542 (3d

10

Cir. 1996); <u>Bridge v. United States Parole Comm'n</u>, 981 F.2d 97, 105 (3d Cir. 1992).  When this

court reviews the Commission's factual findings "[t]he inquiry is not whether the [Commission's]

decision is supported by the preponderance of the evidence, or even by substantial evidence;

the inquiry is only whether there is a rational basis in the record for the [Commission's]

conclusions embodied in its statement of reasons."  <u>Furnari v. U.S. Parole Comm'n</u>, 125

Fed.Appx. 435, 436 (3d Cir. Mar. 8, 2005)(quoting <u>Zannino v. Arnold</u>, 531 F.2d 687, 691 (3d

Cir. 1976)); <u>Gambino v. Morris</u>, 134 F.3d 156, 160 (3d Cir. 1998); <u>Cobb v. Smith</u>, 2005 WL

3159315, *2 (M.D. Pa. Nov. 28, 2005).  The court should also consider whether the

Commission "followed criteria appropriate, rational and consistent with its enabling statutes so

that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'"  <u>Id.</u>

(<u>Furnari</u>, 218 F.3d at 254 quoting <u>Zannino</u>, 531 F.2d at 690).

        As the Third Circuit noted in <u>Furnari</u>, "[t]he Commission is required, under 18 U.S.C.

§ 4206(b), to 'state with particularity the reasons' for a denial of parole."  <u>Furnari</u>, 218 F.3d at

256; <u>see</u> <u>also</u> 28 C.F.R. §2.13(c).  Furthermore, the Third Circuit has stated that the

Commission's statement of reasons must reveal reasoning, and not simply present

conclusions, at least where the reasoning is not apparent from the facts of the case.  <u>Marshall</u>

<u>v. Lansing</u>, 839 F.2d 933, 942-43 (3d Cir. 1988).  With the above legal principles in mind, the

court will consider the merits of Razzoli's petition.

        **B.**    <u>**ANALYSIS**</u>

        Razzoli has been paroled on three occasions.  On each occasion, he has violated parole

and parole was subsequently revoked.  He was last reparoled on December 19, 2003 following his acceptance of an expedited revocation agreement with an effective reparole date of September 28, 2004.  As set forth above, there have been various reasons why Razzoli has not been reparoled to date.  In the instant petition he raises numerous challenges to the actions taken by the Parole Commission.  The court will now address Razzoli's arguments.

A.      **Expedited Revocation Agreement**

One of the main contentions raised by Razzoli in his petition is with regard to the April 22, 2004 expedited revocation agreement.  He argues that he appended a page to the agreement wherein he added several conditions including halfway house placement, his withdrawing a civil lawsuit he previously filed and his receipt of a certificate of expiration of sentence.  (Doc. 1, Pet., unnumbered Ex. 1; Doc. 11, Response, Ex. 11.)  Respondents have always maintained that they never agreed to these conditions or signed any agreement containing these conditions and, as such, the appended conditions are not valid.  More importantly, they state that this argument has previously been unsuccessfully litigated by Razzoli in the United States District Court for the Eastern District of New York and therefore cannot be relitigated here.  Attached to the response to the petition is a copy of an opinion issued by the Eastern District Court of New York on July 14, 2004.  See Razzoli v. Zenk, Civil Action No. 04-CV-1269 at 7 (E.D.N.Y. July 14, 2004), wherein the court held that Razzoli was not entitled to judicial enforcement of the statements he appended to the Notice of Expedited Revocation agreement.  Specifically, the New York court noted that "[t]hough petitioner

12

contends that this statement is part of his parole revocation agreement, it is clear to the court that the statement was not adopted by the Commission." (Doc. 34, Ex. 21 at 7.)

The precise issue regarding the parole revocation agreement that Razzoli litigated in the New York District Court he now attempts to argue anew in this action. The court agrees with Respondents that Razzoli's attempt to relitigate this issue in a subsequent petition for writ of habeas corpus before this court constitutes an abuse of the writ. See McClesky v. Zant, 499 U.S. 467 (1991). Razzoli fares no better with regard to his contention that the Commission may not retard his parole date because of the terms of the expedited revocation agreement. Razzoli filed an appeal with the National Appeals Board following the Commission's action in retarding his parole date after he received the first disciplinary infraction and failed to submit an acceptable release plan. In its decision of December 9, 2004, the Appeals Board noted that in signing the expedited revocation agreement, Razzoli agreed to the following statements: "I understand that my reparole date is contingent upon my maintaining a record of good conduct in the institution up to the date of release and an acceptable release plan. I understand that my consent will not constitute an enforceable agreement with respect to any other action the Commission is authorized to take by law or regulation, or to limit in any respect the normal consequences of revocation." (Doc. 34, Response, Ex. 16.)

### B.    Authorization of Probation Officers to Arrest for Parole Violation

Razzoli also contends that the probation officers who arrested him with regard to his parole violation were without arrest power and therefore the arrest was in violation of the Fourth

Amendment.  Razzoli's argument is not well-taken.  18 U.S.C. § 3606 specifically provides that

a probation officer may arrest probationers and those on supervised release, and may execute

warrants for their arrest issued by a court.  As such, a probation officer may be considered a

"federal officer authorized to serve criminal process within the United States."  See 18 U.S.C.

§ 4213(d).  Further, the probation officers were aware of the existence of a warrant charging

Razzoli with parole violations and did not overstep their authority in aiding in his apprehension

and delivery to the United States Marshals.  See United States v. Polito, 583 F.2d 48, 53 (2d

Cir. 1978).

###    C.    Failure to Exhaust Administrative Remedies Regarding CCC Placement

Regarding Razzoli's claim for CCC placement, he must first exhaust this issue via the

Administrative Remedy Procedure for Inmates set forth in 28 C.F.R. § 542 et seq.  An inmate is

required to raise his complaint through informal resolution. He may then appeal to the warden.

A further appeal of an adverse decision is raised with the Regional Director, and then finally

with the Central Office of the Federal Bureau of Prisons.  Id.  Respondents submit the

declaration made under penalty of perjury of Sandra Ante, Attorney Advisor at the United

States Department of Justice and assigned to the Consolidated Legal Center at Allenwood,

Pennsylvania.  (Doc. 34 , Ex. 19).  Ante states that a review of administrative requests and

appeals index of the Bureau of Prisons reveals that Razzoli has failed to exhaust the

administrative remedy process with regard to his claim of CCC placement.  While two appeals

were pursued to the Regional level, no appeals were filed with the Central Office. (Id. at ¶8.)

Because federal inmates are required to exhaust their administrative remedies prior to filing a

§ 2241 petition, and Razzoli has failed to do so, this claim is unexhausted. <u>See</u> <u>Moscato v.</u>

<u>Bureau of Prisons</u>, 98 F.3d 757, 760 (3d cir. 1996).

**D.     Denial of release on parole by BOP/United States Parole Commission**

Razzoli challenges the continuous retardation of his effective parole dates on numerous

grounds.  As previously set forth, he has been paroled, violated parole conditions and had his

parole revoked several times.  Following the last parole revocation, Razzoli accepted the

expedited revocation agreement on April 22, 2004 and was given an effective reparole date of

September 28, 2004.  Since that time, the date has been retarded on numerous occasions for

reasons which include the existence on his record of an active detainer out of the Bronx, New

York, institutional misconduct and his failure to submit an acceptable release plan.  Razzoli has

contended all along that no detainers were pending.  He also claimed that the institutional

misconducts cited as reasons for retarding the parole date were manufactured by Respondents

based upon retaliation for past and present court actions he has filed. The court will address

these issues in view of the instant record before it.  While Razzoli has filed motion after motion

requesting an evidentiary hearing in this case, a decision on the underlying issues does not

warrant a hearing in light of the well-documented trail of events which have taken place in

Razzoli's quest for parole.

Razzoli was found guilty, following a disciplinary hearing, of interfering with a staff

member in the performance of duties.  The record reveals that based upon this information, the

Parole Commission, pursuant to 28 C.F.R. §§ 2.34(a) and 2.40 reopened Razzoli's case on September 29, 2004, and retarded his effective parole date for 60 days based upon his violation of institutional rules.[7] (Doc. 34, Ex. 13.)   Razzoli challenges the findings of the Disciplinary Hearing Officer on the basis that the incident report was "staged" in an effort to delay his release.  There is no evidence that Razzoli exhausted his administrative remedies with regard to this claim.   He states that he informally attempted to resolve this issue before filing this action with the court.  (Doc. 1, Pet. at 6.)  Further, his petition sets forth allegations of retaliation and conspiracy which are both unsupported and conclusory.

The new effective parole date of November 27, 2004, was thereafter extended several times due to no acceptable release plans being submitted by Razzoli and ineligibility due to the existence of an active warrant for his arrest for failure to pay an outstanding fine with the District Attorney's Office in Bronx, New York.  Razzoli vehemently insists that all detainers were lifted and that the release plans submitted were arbitrarily rejected by the Parole Commission. Razzoli submits a copy of a letter dated August 27, 2004 from the Office of the District Attorney, Bronx County, New York, to FCI-Allenwood.  (Doc. 1, Ex. 3B.)  In the letter, the officials at Allenwood are advised that Razzoli ". . . will not be extradited on the charges contained in Docket Number 2001BX052035 and that the BOP can lift the warrant at the

---

[7] Section 2.34(a) provides that when an effective date of parole has been set by the Commission, release on that date is conditioned upon continued satisfactory conduct by the prisoner. If a prisoner has been found in violation of institutional rules by a Disciplinary Hearing Officer, the case may be reopened and the effective parole date retarded for up to 90 days without a hearing, or schedule a rescission hearing.

present time."  The BOP is further advised that Razzoli may return himself upon his release

from incarceration.

During the course of the special reconsideration hearing conducted by the Parole

Commission on June 8, 2005, Razzoli was represented by his attorney Louis Buffardi.  It was

noted during the hearing that Razzoli had paid the fine which was the basis for the Bronx, New

York detainer.  A copy of the receipt, dated June 7, 2005, was provided to the hearing

examiner.  Thus, up until this point, the detainer does appear to have still been active, in

existence and a valid basis for the extension of the effective parole date.  (Doc. 62, Ex. 25,

Hearing Summary.)   Based upon the record, it cannot be found that the Parole Commission's

actions were arbitrary with respect to citing the existence of the Bronx detainer and the

utilization of this factor in retarding Razzoli's effective parole date.

Other reasons set forth by the Commission for retarding the date were Razzoli's

continuing failure to submit an acceptable release plan.  Pursuant to 28 C.F.R. § 2.28(e), when

an effective date of parole has been set by the Commission, release on that date shall be

conditioned upon the completion of a satisfactory plan for parole supervision.  It is further

provided that retardation of a parole date for up to 120 days may be issued by the Commission

for purposes of release planning.  In the instant case, it is true that several release plans were

submitted by Razzoli.  While he may have believed they were satisfactory and should have

been accepted by the Commission, the court must look to the reasons relied upon by the

Commission in support of their decisions to ensure the actions taken by the Commission were

not an abuse of discretion.  In reviewing the record before the court, there exists a rationale

basis for the actions taken by the Commission and there is no evidence that the retarding of

Razzoli's parole dates was based on impermissible considerations.

On November 12, 2004, Razzoli's case manager Keith Dewey notified the Parole

Commission by Memorandum that two proposed release plans had been denied by the United

States Probation Department for the Southern District of New York.  The first plan was dated

October 7, 2004, and the second dated November 5, 2004.  (Doc. 34, Ex. 14.)  On November

23, 2004, the Commission issued a Notice of Action reopening and retarding the parole

effective date of November 27, 2004, by 60 days with a new parole effective date of January

26, 2005.  In the statement of reasons for its decision, the Commission cited to the

Memorandum from the BOP and stated that although the BOP reported Razzoli had

substantially maintained good institutional adjustment, additional time was needed to develop a

satisfactory release plan.  There is no evidence to suggest that the effective parole date was

retarded by the Commission for any reason other than the fact that he did not have a

satisfactory release plan in effect or that any impermissible factors were taken into

consideration by the Parole Commission in reaching their decision.  The lack of acceptance of

Razzoli's plan by the Southern District of New York as set forth in the BOP Memorandum and

no other accepted plan clearly establish a rationale basis for retarding Razzoli's effective parole

date to January 26, 2005.

Another Notice of Action was issued by the Commission on January 26, 2005, retarding

the effective parole date by another 60 days.  The reasons provided for this activity stem from a Memorandum from Dewey dated January 25, 2005, wherein he informed the Commission that in addition to providing the two release plans which have been denied by the Southern District of New York, Razzoli recently requested to relocate to the District of New Jersey to participate in CCC placement, however, he was unable to provide a release address there.  Dewey further advised the Commission that on January 25, 2005, the District of New Jersey stated that they would not approve Razzoli's relocation request.  A 60 day retardation of the effective parole date was thereafter requested.  (Id., Ex. 17.)   Based upon the additional time needed to develop a satisfactory release plan, the parole date was made effective March 27, 2005.  (Id., Ex. 18.)

Again, as Razzoli's effective date approached, he still had not developed a viable release plan.  A Memorandum dated March 18, 2005, from Steven Brunson, Case Analyst for the U.S. Parole Commission, was forwarded to the Commission advising that no plan was yet in place and recommending that a special consideration hearing be scheduled to consider a release plan since a parole date is only allowed to be retarded for a total of 120 days for release planning.  (Id., Ex. 22.)  A Notice of Action was thereafter issued by the Commission on March 22, 2005, directing that the case be reopened and the parole effective date of March 27, 2005 be retarded and a special hearing be scheduled.  It was further directed that should Razzoli develop an approved plan before the hearing date, that the Commission be advised so that a parole date could be set and the hearing cancelled.  (Id., Ex. 23.)  Based upon the

undisputed fact that Razzoli had no plan for release approved at this point, it cannot be said that the Commission's action in setting a special hearing was not rationale.

In June of 2005, the Commission received notification from the United States Probation Office for the Northern District of Illinois that a proposed release plan by Razzoli had been denied.  (Doc. 62, Ex. 24, Letter dated 6/7/05.)  The letter detailed how Razzoli had entered into a lease agreement with a Mr. Michael Llano, providing him with 2 months rent and a security deposit through Razzoli's attorney, Mr. Buffardi.  The Probation Officer from the Northern District of Illinois states he inspected the apartment.  He proceeds to state that he ultimately denied Razzoli's relocation request for several reasons. One of the reasons cited was the outstanding detainer for the Bronx, New York fine, which at that time had not yet been paid. The second reason was due to the lack of ties Razzoli had to the area, other than business ties to Attorney Buffardi.  Razzoli had never lived in the Chicago area before and had family/friends on the East Coast.  The third reason cited was Razzoli's lack of established firm employment. While Razzoli was in the produce business since childhood with his family, he lost the business when arrested.   He desired to establish a produce business in Chicago to be sold locally, however, there was no guarantee that he would follow through on this plan.  The Probation Office of Northern Illinois stated it would be better if Razzoli already had a business established or some other firm job offer.  His relocation to Illinois was denied for the foregoing reasons but it was noted that should Razzoli be released to New York and supervised there, and the outstanding warrant be taken care of, relocation to Illinois may be reconsidered at a later date.

At the special consideration hearing conducted by the Commission on June 8, 2005, Razzoli was represented by Attorney Buffardi and did produce a receipt documenting that the outstanding Bronx fine had been satisfied the day before.  (Doc. 62, Ex. 25, Hearing Summary.) At the hearing Razzoli's release plans were reviewed with him.  Buffardi indicated his willingness to sponsor Razzoli in Chicago and Razzoli stated his desire to start a produce business in Chicago.  The Hearing Examiner recommended to the Commission that the parole effective date be retarded by 60 days based upon the denial of Razzoli's plan by the Northern District of Illinois, no ties to the Chicago area other than business ties with his attorney, and no establishment of firm employment there.

The Hearing Examiner further stated that it was not known why the Southern District of New York denied Razzoli's release plan, but did note Razzoli had twice been released there before, and violated parole both times.  Because Razzoli's business was in that area, however, it seemed the most viable option to pursue. It was recommended that the New York plan be investigated again in that there was the possibility that Razzoli could reside with his girlfriend, who was attempting to find an apartment.  A parole effective date was not recommended by the hearing examiner in view of the fact that no developed release plan existed.  Pursuant to 28 U.S.C. § 2.28-02(e), it was recommended that the parole date be retarded until an acceptable release plan was in place.  A review of the case was also recommended to take place every 30 days by the Regional Commissioner until a plan was developed.  It was further recommended that the Case Analyst contact the Southern District of New York to determine the basis of their

21

denial, as it would appear that was the best option for supervision as opposed to Illinois where he had no family or established business.

A Notice of Action was thereafter issued by the Parole Commission on June 27, 2005, adopting the above recommendations of the hearing examiner and retarding the parole effective date of March 27, 2005, pursuant to 28 C.F.R. § 2.28-02(e) until an acceptable release plan was developed, and directing the regional Commissioner to personally review the record once every thirty (30) days at a minimum.  (Id., Ex. 26.)  The rationale for taking this course of action is apparent and well supported as set forth in the recommendation received from the hearing examiner.

The following day, the Probation Office for the Middle District of Pennsylvania informed the court that it would be willing to accept Razzoli under parole supervision provided he had a suitable release plan.  (Id., Ex. 27.)  Just short of a month later, the Commission was informed that a release plan had been sent to the Southern District of New York on July 6, 2005.  This plan was ultimately denied on the basis that no release address was provided and the Probation Department questioned whether Razzoli would be able to afford housing following his release from CCC placement.[8]  (Id., Exs. 28, 29.)   The Commission again reviewed the status of Razzoli's case and determined that no change was warranted in that the status of his release plans remained unchanged.  (Id., Ex. 30.)

_____

[8]  Prior to the time the denial was issued, a case review was conducted by the Commission wherein no change from the previous order was warranted since no plan had since been accepted.

It seemed like progress started to be made in September of 2005 when the Commission was informed that Razzoli's case manager received verbal acceptance of a second release plan that Razzoli had submitted to the Northern District of Illinois.  (<u>Id.</u>, Ex. 32.)   However, by the next time the Commission reviewed Razzoli's case, on October 6, 2005, there was still no written plan acceptance, therefore no change to the prior order was issued.  (<u>Id</u>., Ex. 33.)

It also appeared that the Middle District of Pennsylvania was going to be an option as the Commission learned on October 26, 2005, that the Chief U.S. Probation Officer in the Middle District was willing to accept Razzoli and approve public law placement.  Razzoli had also reluctantly agreed to the relocation there.  (<u>Id</u>., Ex. 34 at 2.)   While Razzoli contends that he was "forced" into accepting a relocation to Pennsylvania, this issue is now without relevance based upon subsequent events which occurred at FCI-Allenwood.  The record reveals that on November 17, 2005, Razzoli was found guilty, following a disciplinary hearing, of "Possessing a Dangerous Weapon", a Code 104 violation.  (Doc. 64, Ex. 37, DHO Hearing Report.)  Razzoli has been sanctioned to disciplinary segregation for 60 days, forfeiture of statutory good time of 220 days, loss of phone, visiting and commissary privileges for 18 months and a disciplinary transfer to meet his greater supervision needs.  The hearing report reveals that Razzoli had staff representation and presented witnesses and evidence.  Based upon the results of the disciplinary hearing, the Parole Commission may now reopen the case and retard Razzoli's parole date for up to 90 days, or schedule a recission hearing.  <u>See</u> 28 C.F.R. § 2.34(a). Further, because the DHO found Razzoli to have committed the institutional misconduct, this

finding conclusively establishes the violation.  28 C.F.R. § 2.34(c).  Pursuant to Commission

regulations, since the DHO found Razzoli to have possessed a shank, this could even result in

the assessment of additional guidelines of 12 - 16 months.  See 28 C.F.R. § 2.36(a)(2)(ii)[9].

At the present time, a hearing before the Commission is scheduled to take place later this

month.  Based on the foregoing, there clearly exists a rationale basis to support the continued

confinement of Razzoli at this time.

Razzoli has bombarded the court with filings since he received the incident report

charging him with the "possession of weapon" offense.  He contends he was "set-up" and

raises numerous procedural challenges to the disciplinary proceedings which were conducted.

He requests discovery be permitted and evidentiary hearings be conducted by the court to

review his claims.  This issue, however, is not before the court in the pending petition for writ of

habeas corpus.  If Razzoli desires to challenge the DHO proceedings and resulting sanctions,

such claims are the subject of a separate lawsuit which must first be administratively

exhausted.  This court's inquiry is limited to the denial of release on parole which, until

November 8, 2005, was due in part to an existing detainer, an issue which has since been

addressed, and the failure to have an acceptable release plan, thereby prohibiting his release

pursuant to 28 C.F.R. § 2.28(e). The court has reviewed each retardation of parole date by the

Commission based upon the failure to submit an acceptable plan and found each denial

---

[9]  This section addresses rescission guidelines, specifically new criminal behavior in a prison facility.  A Category Three offense, which includes possession of a knife in a prison facility, carries a guideline range of 12 to 16 months .

grounded upon a rationale basis.  While Razzoli appeared to be making some progress toward a possible release to supervision in the Middle District of Pennsylvania, his disciplinary infraction has now halted any potential release at this time.  Accordingly, the petition for writ of habeas corpus will be denied.  An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN RAZZOLI,                          :
                                        :
          Petitioner                    :
                                        :
     v.                                 :     CIVIL NO. 3:CV-04-2495
                                        :
FCI ALLENWOOD, et al.,                  :     (Judge Kosik)
                                        :
          Respondents                   :

**O R D E R**

_____**NOW, THIS 11th DAY OF JANUARY, 2006,** in accordance with the foregoing

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

    1.      The petition for writ of habeas corpus is **dismissed**.

    2.      All pending motions are **denied** and shall be terminated by the Clerk of Court.

    3.      The Clerk of Court is directed to **close this case**.

_____          s/Edwin M. Kosik_____
                                           United States District Judge